UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| BRANDY ELIZABETH MCCULLOUGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:17-CV-331-TLS |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Brandy Elizabeth McCullough seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her applications for disability and disability insurance benefits. The Plaintiff argues that the Commissioner wrongfully denied her applications and erred by improperly weighing the record opinions of the Social Security Administration's examiners, not accounting for the Plaintiff's devolving psychological and intellectual capabilities, and by overemphasizing daily activities.

## BACKGROUND

On September 5, 2014, the Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning July 20, 3013. (R. 11.) Her claims were denied initially on December 8, 2014, and upon reconsideration on February 16, 2015. (*Id.*) On February 16, 2016, the Plaintiff appeared with counsel and testified at a hearing before an administrative law judge (ALJ). (*Id.*) A vocational expert, Marie Barhydt, also appeared and testified at the hearing. (*Id.*) On June 29, 2016, the ALJ denied the Plaintiff's applications,

finding she was not disabled from her alleged onset date. (R. 8–27.) On June 15, 2017, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review of the ALJ's decision. (R. 1–4.)

On August 4, 2017, the Plaintiff filed this claim [ECF No. 1] in federal court against the Acting Commissioner of the Social Security Administration.

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff had not engaged in SGA since her alleged disability onset date, July 20, 2013. (R. 13.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting her ability to do basic work activities under § 404.1520(c). In this case, the ALJ determined that the Plaintiff had three severe impairments, specifically mild diplegic cerebral palsy, scoliosis, and obesity. (*Id.*) The ALJ discussed a number of the Plaintiff's other complaints at length, including chest pain, chronic leg edema, rheumatoid arthritis, neck pain, knee pain, and mental

impairments including learning problems, depression, anxiety, and memory difficulties, but did not find that any of them were severe.

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of [the] listings in appendix 1 . . . ." 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do physically, despite her limitations—to determine whether she can perform "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and that she had the RFC to perform light work with the following exceptions:

> "limited to lifting, carrying, pushing, and pulling ten pounds frequently and twenty pounds occasionally. The claimant can sit at least six hours in an eight-hour workday and stand and/or walk six hours in an eight-hour workday. The claimant should not climb ropes, ladders, or scaffolds. The claimant can occasionally bend and stoop in addition to what is required to sit. The claimant can occasionally use ramps and stairs. Aside from use of ramps and stairs on an occasional basis, the claimant should not work upon uneven surfaces. It is best that the claimant not work around exposed heights and open and dangerous machinery such as open flames and fast moving blades."

(R. 21.)

The ALJ evaluated two consultative exams performed on the Plaintiff: a psychological examination performed by Dr. Wade and a physical examination performed by Dr. Kamineni. The ALJ accorded little weight to each.

Dr. Wade opined that the Plaintiff had a mild intellectual disability, social anxiety disorder, and major depressive disorder. With respect to the intellectual disability, Dr. Wade specified that he tested the Plaintiff's I.Q. and she scored 75 overall.[1] He also noted that she was a poor historian and inattentive to tasks, that her understanding appeared limited at times, and that her concentration was poor. With respect to the social anxiety, Dr. Wade noted that the Plaintiff would likely have difficulty in some social interactions. (R. 18.) Dr. Wade did not articulate any specific limitations due to the Plaintiff's depression.

The ALJ rejected the diagnosis of intellectual disability, citing the Plaintiff's work history, and supposed inconsistencies in the Plaintiff's reporting of her attempts to achieve her GED and accommodations in school. The ALJ rejected the diagnosis of anxiety, again citing the Plaintiff's work history, adding "the [Plaintiff's] ability to perform jobs that required significant interactions with the public on a long-term basis is inconsistent with the allegedly lifelong limiting social anxiety." (R. 18.) The ALJ also rejected the diagnosis of depression, noting that the Plaintiff pursued mental health treatment "only briefly." (*Id.*).

Dr. Kamineni opined that the Plaintiff "would be able" to sit for 60 minutes at most, but that she would then get "very stiff and have worsening numbness." He also limited the Plaintiff to 30 minutes of standing because of back pain, consistent with decreased lumbar range of motion and tenderness to palpation. Dr. Kamineni limited her lifting to ten pounds, and to walking only six minutes at a time due to back pain and a limp. The ALJ accorded Dr.

---

[1] Appendix 1 sets a score of 70 as creating a presumption of disability for an individual with cerebral palsy. (R. 21.)

Kamineni's opinion "minimal weight," because "such findings appear largely based upon subjective complaints and portrayals at the consultative examination not otherwise reflected in the examiner's other treatment notes or in the remainder of the record." (R. 25.)

The Plaintiff had past relevant work as a cashier. (R. 26.) The ALJ found that the Plaintiff could perform her past relevant work. (*Id.*) Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act as of her alleged onset date. (R. 27.)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's findings of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 308. A court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the

evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

The Plaintiff argues that the Commissioner wrongfully denied her Social Security Disability benefits and erred by (1) improperly weighing the record opinions of the Social Security Administration's examiners, Dr. Wade and Dr. Kamineni, (2) not accounting for the Plaintiff's devolving psychological and intellectual capabilities, and (3) overemphasizing daily activities.

"An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record . . . ." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003); 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who

has not examined you."). Further, "rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled, as happened here, can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). "It is unusual . . . for an ALJ to reject an examining [agency] doctor's opinion because doctors hired by the agency are unlikely to be biased toward claimants the way treating physicians may be, and they are unlikely to exaggerate a claimant's disabilities." *Lear v. Comm'r of Soc. Sec.*, No. 2:14-cv-307, 2016 WL 1165682, at *3 (N.D. Ind. Mar. 24, 2016) (first citing *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013), then citing *Beardsley*, 758 F.3d at 839). "Although an ALJ is not required to accept the views of an agency examining physician if there is a contrary opinion from a later reviewer or other compelling evidence, the ALJ still must have a good explanation for rejecting or discounting the examining physician's opinion." *Czarnecki v. Colvin*, 595 F. App'x 635, 642 (7th Cir. 2015); *see also Andrews v. Colvin*, No. 15 C 7192, 2016 WL 4905671, at *6 (N.D. Ill. Sept. 15, 2016) ("The fact that the ALJ rejected the opinions of two of the agency's own doctors is a red flag and a good explanation is required.").

**A.     Dr. Wade's Opinion**

In order to evaluate the Plaintiff's claim, the Social Security Administration retained Dr. Wade to examine the Plaintiff in 2014. After the examination, Dr. Wade diagnosed the Plaintiff with a Mild Intellectual Disability, Social Anxiety Disorder, and Major Depressive Disorder, Recurrent, Severe. (R. 346.) The Court finds that the ALJ did not give a valid explanation for rejecting Dr. Wade's diagnoses.

7

*1.  Mild Intellectual Disability*

In diagnosing the Plaintiff with a mild intellectual disability, Dr. Wade applied the Wechsler Adult Intelligence Scale test, and the Plaintiff scored 75, which is lower than 95% of the population. Dr. Wade reported that, although the Plaintiff's persistence during the examination was fair and she put forth "a good effort," the Plaintiff was a poor historian, inattentive to the tasks she was asked to perform, her comprehension was incomplete, and she struggled to concentrate.

The ALJ gives the following reasons for discounting Dr. Wade's diagnosis of mild intellectual disability: (1) the Plaintiff reported some details to Dr. Wade which were inconsistent with other reports (R. 17), and (2) the Plaintiff "has held jobs that are inconsistent with limiting intellectual deficits" (R. 19.)

The inconsistencies that the ALJ highlights are unconvincing. The ALJ's primary example is that the Plaintiff told Dr. Wade she had attempted the GED "several times," while indicating elsewhere in the record that she attempted the GED twice. (R. 17.) The difference between attempting one's GED two times as compared to several times is not the kind of "compelling evidence" that justifies a rejection of a consultative examiner's opinion, particularly given that the consultative examiner made a point of noting that the Plaintiff was a "poor historian." *See Beardsley*, 758 F.3d at 839.

The ALJ also failed to fully explain his second reason. The ALJ describes the Plaintiff as holding "jobs that are inconsistent with limiting intellectual deficits." (R. 19.) However, the Plaintiff related to Dr. Wade that in her most recent, longest job, "her concentration was likely poor, as her coworkers had noticed that she had made mistakes," and that "[w]hen being trained to balance drawers, she made many mistakes, and her coworkers had to go over her work and

8

explain what she was doing wrong. She stated that she would not finish the 'bookwork' at times, as she could not figure out what she had done incorrectly." (R. 343.) Dr. Wade, knowing the Plaintiff's work history, diagnosed her with a mild intellectual disability.

While "consideration of a claimant's work history is proper when the claimant has had essentially the same condition for decades, and remained able to work," *see Hill v. Colvin*, 807 F.3d 862 868 (7th Cir. 2015), the record shows the Plaintiff as not able to work during this period. Work history and disability are not facially contradictory. The Seventh Circuit has acknowledged situations very similar to the Plaintiff's:

> A disabled person . . . may land work. We've noted cases in which although the claimant is not only working but also earning a decent wage, he really is permanently disabled . . . Maybe a seriously disabled worker is able to work only by dint of his extraordinary determination and the extraordinary assistance extended to him by kindly fellow workers.

*See Voigt v. Colvin*, 781 F.3d 871, 876–77 (7th Cir. 2015).

The ALJ did not account for this possible explanation for the coexistence of Dr. Wade's diagnosis and the Plaintiff's work history. Because the ALJ did not address this explanation, which was present in the record, the ALJ has disregarded Dr. Wade's opinion, on the basis of evidence Dr. Wade considered, without explaining why.

### 2. *Social Anxiety Disorder and Major Depressive Disorder, Recurrent, Severe*

The ALJ similarly rejects Dr. Wade's diagnosis of social anxiety disorder because (1) the ALJ believes such a diagnosis is inconsistent with the Plaintiff's work history, and (2) the Plaintiff "did not report social anxiety during the evaluation or therapy session" at the Northeastern Center. (R. 18.) First, as noted above, the ALJ's rejection of Dr. Wade's diagnosis of anxiety because of the Plaintiff's work history is unsupported. Second, the record shows that

9

the Plaintiff did report anxiety during her treatment at the Northeastern Center. (R. 18) ("She reports some anxiety . . . she does not sleep well, maybe two hours a night, and wakes up often . . .").[2] The ALJ did not explain how an earlier report of anxiety, at a single session, supports the ALJ's rejection of Dr. Wade's diagnosis of social anxiety.

The ALJ rejects Dr. Wade's diagnosis of depression because (1) she was diagnosed with dysthymia rather than depression at the Northeastern Center, and (2) she "pursued mental health treatment only briefly." (R. 18.) As with anxiety, the ALJ does not explain how an earlier diagnosis of dysthymia is contradictory to Dr. Wade's diagnosis of depression. As for the second reason, as the Seventh Circuit has noted, deficits in concentration and persistence due to low I.Q. might make a patient fail to follow through on counseling. *See Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006). Here, too, the ALJ did not explain his rejection of Dr. Wade's diagnosis. In his rejection of all three diagnoses, the ALJ did not build a logical bridge in his weighting of Dr. Wade's opinion. For this reason, remand is due.

**B.     Dr. Kamineni's Opinion**

The Social Security Administration also retained Dr. Kamineni to examine the Plaintiff in 2014. After the examination, Dr. Kamineni opined that:

> The patient would be able to sit for 60 minutes at the most then she gets very stiff and has worsening numbness and stand for 30 minutes at the most because of back pain. [S]he would be able to carry 10 pounds and then has shoulder and chest pain. [S]he would[]not be able to lift more than 10 pounds. [S]he would[]not be able to walk 6 minutes [*sic*] back pain and limp. [S]he has normal fine motor skills with normal handling of fine objects. [A]bnormal concentration and decreased social interaction because of CP.

(R. 339.)

---

[2] The ALJ does note that the Plaintiff reported "some" anxiety earlier in his opinion. The reference further underscores the disconnect between the ALJ's rejection of Dr. Wade's diagnoses and the record before him.

The ALJ's primary reason for rejecting Dr. Kamineni's opinion of the Plaintiff's limitations is the ALJ's interpretation of the record. For example, the ALJ rejects the limitations on sitting because "no sensory deficits have been noted during any examination." (R. 25.) The ALJ does not explain how this detracts from Dr. Kamineni's opinion regarding the amount of time the Plaintiff could sit. The ALJ discounts Dr. Kamineni's opinion that the Plaintiff can stand for only 30 minutes because of back pain by saying that "no complaints in this regard were made during prior visits with Dr. Kamineni," while simultaneously repeating Dr. Kamineni's findings that lumbar range of motion was decreased and the area was tender to palpation. (*Id.*) The ALJ appears to be substituting his own medical judgment for that of Dr. Kamineni. If Dr. Kamineni determined that the Plaintiff was subject to limitations based on the presentation he saw, it is not for the ALJ to second-guess the opinions of a medical professional based on that professional's own earlier notes. The ALJ goes through several other of the limitations, and finally summarizes his objections by saying "[s]uch findings appear largely based upon subjective complaints and portrayals at the consultative examination not otherwise reflected in the examiner's other treatment notes or in the remainder of the record." (*Id.*)

"The ALJ must give substantial weight to the medical evidence and opinions submitted, unless specific, legitimate reasons constituting good cause are shown for rejecting it." *Beardsley*, 758 F.3d at 840 (citing *Knight v. Chater*, 55 F.3d 309, 313–14 (7th Cir.1995)). The ALJ says that Dr. Kamineni's findings "appear largely based on subjective complaints." However, the ALJ does not identify what in Dr. Kamineni's report appears to be subjective. Similarly, while the ALJ also cites the lack of support in Dr. Kamineni's treatment notes and the remainder of the record, the ALJ does not identify a direct contradiction in the record; only the absence of

corroboration. The ALJ has therefore not identified the "specific, legitimate reasons constituting good cause" for rejecting the agency's own physician's opinion. *Id*.

Because the ALJ did not explain his assignment of weight to the opinions of both of the two state agency physicians, remand is due.

## CONCLUSION

For the reasons stated above, the Court REVERSES and REMANDS this case for further proceedings in accordance with this Opinion and Order. Because the Court is remanding on these issues, it need not address the remainder of the parties' arguments. On remand, however, the ALJ is encouraged to additionally consider all of the Plaintiff's impairments in combination during the third step.

SO ORDERED on August 17, 2018.

                                                s/ Theresa L. Springmann
                                                CHIEF JUDGE THERESA L. SPRINGMANN
                                                UNITED STATES DISTRICT COURT